## Kinsey C. Kent, Appellant, v. William H. Beam, Appellee.

1. DAMAGES—*when cannot be recovered for breach of contract to convey land.* No contract for the sale and conveyance of land having been entered into by the owners or by one in authority in their behalf, no recovery can be had for a refusal to convey.

2. STATUTE OF FRAUDS—*when contract within.* A contract for the conveyance of land must be signed by the owner or by one duly authorized in writing.

Appeal from the Circuit Court of Christian county; the Hon. JAMES C. McBRIDE, Judge, presiding. Heard in this court at the May term, 1911. Affirmed. Opinion filed October 14, 1911.

W. B. McBRIDE and J. E. HOGAN, for appellant.

FRANK P. DRENNAN, for appellee.

Mr. Presiding Justice Philbrick delivered the opinion of the court.

This is an action brought by plaintiff against defendant to recover damages for alleged breach of contract for the sale of real estate.   Trial below resulted in a verdict for the defendant and a judgment against plaintiff for costs, in bar of action, from which he appeals.

The declaration in this case charges that the defendant bargained and sold to the plaintiff a certain tract of land in Christian county at the price of $155 per acre, that plaintiff paid to the defendant $1,000 on the contract price and that by the terms of the contract defendant agreed to furnish plaintiff with an abstract of title showing the premises free and clear of all encumbrance.   By his pleas, defendant denied all of the allegations in plaintiff's declaration and specially pleaded the Statute of Frauds.   The issues were joined and trial had.   At the close of all the evidence for the plaintiff, on motion of the defendant, the court excluded the evidence and directed a verdict for the defendant.

The record in this case discloses that defendant did not reside in Christian  county  but that one Louis Johnson attempted to act as agent of the defendant and entered into a parol contract of sale with the plaintiff for the transfer of the eighty acres of land in question.   Johnson was a banker at Morrisonville, Illinois, and also handled real estate on the side.   He wrote defendant in April, 1909, that he had a purchaser who was willing to buy the eighty acres in question at $150 an acre, and asked defendant to write him what he thought about it.   Johnson destroyed the reply and it was not produced in evidence, but Johnson testified that in the reply defendant informed him that there was a mortgage on the land for $4,000 to run for five years, that they would be willing to sell it at

$150, but since the mortgage was placed on the land there would be no sale at the present time, but that if he came back to Morrisonville he would talk it over with Johnson. Johnson replied as follows:

"Yours of the 16th inst. at hand and contents noted. It seems to me that if we can secure a purchaser at $150 per acre is a long price and I am satisfied he would assume the loan you have made on it, don't seem to me that you can realize the interest on a $150 value and pay the taxes. Think it over and let me hear from you again soon. It may be a long time before we will be able to find a purchaser at this figure. We are having too much rain here, entirely too wet."

Defendant replied on January 12:

"We have now decided to sell the 80 acres owned by us and will sell for $155 an acre. In one of my letters I said I would come and talk with you, but did not get to come that way. If I owned the 80 acres myself would not sell."

To this letter Johnson replied on January 14:

"Yours of the 12th inst. at hand and contents noted, saying you had decided to sell the 80 acres at $155. Upon this notice I have bargained and sold this 80 acres for you at $155 per acre, terms cash, on or about March 1, 1910. I have taken $1,000 in cash to bind the purchase, balance $11,400 on or before March 1st. Please send me the names of your brothers and sisters and wives and husbands if they have any and I will prepare the deed and forward the same to you for signatures. You are also to furnish abstract up to date showing a good title."

On January 16, defendant wrote Johnson as follows:

"Received your letter last night and have written to my brother and sister in Spokane that you will buy the 80 acres at $155 and told them to wire me at once. I will get a reply about Wednesday. They told me to find a purchaser at that money but wish to tell them. The abstract is up to date and the title clear. We put a $4,000 mortgage on the 80 acres last May for 5 years; the abstract is with the mortgage in Springfield. Hop-

ing this will be satisfactory for a few days ........."

On January 25, defendant again wrote Johnson:

"I received a letter from my brother and sister that live in Spokane in regard to the 80 acres; they say they are not satisfied with the amount as I had written to several persons in regard to selling the land and they want it at that price, too, and wouldn't hardly know who to let it go to. My brother and sister think they ought to get a little more money, now this piece of land is going to be sold, so please write me and oblige."

Johnson also testified that he knew that the defendant did not own this land, that it was owned jointly by the defendant and his brother and sister. The correspondence as disclosed by this record shows that Louis Johnson as a real estate dealer undertook to find a purchaser for the real estate owned by the defendant and his brother and sister, without any instructions or directions so to do by the defendant, and having obtained what he supposed would be a buyer at $150 per acre, reported to the owners of this land that he could sell it for them at that figure, but that he wanted $100 commission for so doing, and the correspondence does not in any particular disclose or show that the defendant or any one owning this land ever undertook to enlist or engage the services of Johnson or requested him to find a purchaser for this land or authorized him to execute any papers for the sale thereof; no terms of sale were ever mentioned in the correspondence and no time when delivery would have to be made, but Johnson, without any authority whatever, undertook to make a sale of this land and accepted $1,000 as cash payment thereof; he was never authorized or directed to do so. Plaintiff knew that Johnson was not the owner of this land and in dealing with him, even though he was the agent, the record does not disclose that he attempted in any manner to ascertain the authority of Johnson to make the sale or to receive any payment upon the pretended sale. In

addition to the fact that the evidence discloses no authority in Johnson to make a sale of this property, the defendant pleaded and relies upon the Statute of Frauds and the section of that statute which is as follows:

"No action shall be brought to charge any person upon any contract for the sale of lands, tenements or hereditaments or any interest in or concerning them, for a longer term than one year, unless such contract or some memorandum thereof shall be in writing and signed by the party to be charged therewith, or some person thereunto by him lawfully authorized in writing, signed by such party."

The record will be searched in vain for any intimation of evidence tending to show that defendant or any one ever authorized by him signed any contract or memorandum relating to the sale of this real estate, and in this state of the evidence, the Statute of Frauds presents a complete defense to this action. The trial court committed no error in directing a verdict for the defendant and rendering judgment thereon.

The judgment is affirmed.

*Affirmed.*